189 So.2d 254 (1966)
STATE of Florida, Appellant,
v.
Evelyn F. HICKMAN, Appellee.
No. 7015.
District Court of Appeal of Florida. Second District.
July 29, 1966.
Rehearing Denied September 2, 1966.
*255 Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellant.
Robert E. Jagger, Public Defender, Robert E. Pyle, Asst. Public Defender, Clearwater, for appellee.
PIERCE, Judge.
The State of Florida has appealed from an order of the Circuit Court for Pinellas County, entered on February 4, 1966, quashing an information[1] filed in that Court by the State Attorney charging Evelyn F. Hickman, hereinafter called defendant, with the offense of obtaining merchandise of the value of $84.12 from the Clearwater Lerner Shops by means of a worthless check in said amount given by the defendant to said Lerner Shops.
The information was filed on December 2, 1965, alleging the offense to have occurred on March 8th, 1963 (obviously more than two years previous), but averring that on March 18th, 1963, warrant was issued by Justice of the Peace Richard C. Davis charging defendant with the same offense alleged in the information and that said warrant was delivered on the following day, March 19, 1963, to the Sheriff of Pinellas County, Florida.
To the information, defendant filed motion to quash,[2] alleging that defendant was *256 arrested on September 30, 1965 upon said warrant by the Sheriff and had been held in custody since said arrest. But the motion further averred that "the warrant upon which the information in this cause is based, is fatally defective in that said warrant was not signed by the Justice of Peace aforesaid, but was, in fact, stamped by someone with the facsimile of the said committing Magistrate, and this fails to comply with the provisions of Chapter 901.03(6) of the Florida Statutes [F.S.A.], which requires that the warrant be signed by the Magistrate." The motion contended this made the warrant "fatally defective, the Statute of Limitations was not tolled thereby," and therefore "the Court thus lost jurisdiction to prosecute said Defendant on said charge." On February 4, 1966 the Circuit Judge entered order which stated inter alia:
"It is the finding of this Court that an official's use of a facsimile signature, per se, is not invalid and that the Warrant, in this instance, is presumed to be valid, having the appearance of being signed by the proper official. It is the further finding of this Court that although an official may adopt any mark or stamp as his official signature, same must be impressed on said document by said official in order to comply with the provisions of Section 901.03(6). It is the opinion of this Court that said Section contains no authorization for said official to delegate to any other person authority to impress his signature on a Warrant.
"It appearing from the testimony of the Honorable Richard C. Davis that he does not know whether he impressed the facsimile stamp upon the Warrant and that it could have been placed thereon by his criminal clerk, upon his authorization, it is the finding of this Court that the presumption of the validity of the Warrant is overcome and said Warrant is hereby found invalid."
The order thereupon granted the defendant's motion to quash, and this is the order which the State has appealed to this Court. By assignments of error, the State contends that the warrant issued on March 18, 1963, "was properly * * * issued by the appropriate * * * authority and was not in fact deficient * * *" and that the defendant "failed to overcome the presumption of validity that attaches to an Order issued from a proper Court * * * with appropriate jurisdiction * * *"; that therefore the Court erred in granting the motion to quash the information.
At the hearing upon the motion to quash, the Justice of the Peace who originally issued the warrant, Honorable Richard C. Davis, testified. He said that he could not remember distinctly having issued this particular warrant some three years prior to his testimony, but he could remember having issued many of them in this particular form; that generally his Chief Clerk would prepare the warrant as well as the affidavit and work sheets and have them arranged on his desk at the close of a business day, at which time she would take a rubber stamp facsimile of his signature and attach it to the documents; that occasionally he would authorize his Chief Clerk to affix his facsimile signature thereto "after having discussed the matter fully" with her; that there was no case where she or anyone else other than himself attached his signature to such instruments without his "specific prior authorization and knowledge"; that his Chief Clerk alone had sole possession of his facsimile signature or authority to affix it to warrants, and then only after prior discussion with, and authorization from, him as Judge; that specifically on "bad check charges" he never gave telephone authorizations, but as to these he would always handle personally himself because such cases were made by one "Johnny McMullen of the Sheriff's office."
The Circuit Judge ruled that the warrant was presumed to be valid and the burden was on the defendant "to show the facsimile *257 signature was not placed thereon by the authorized official." Judge Davis was the only witness testifying and was called by the State, although the Circuit Judge, after the hearing, ruled that the State produced Judge Davis as a witness only after the Circuit Judge had at first erroneously ruled the burden was on the State to show a valid warrant, but that when he reversed his own ruling on the point he then considered Judge Davis' testimony as being "the testimony of the defendant" (thus making an anomaly of a complexity).
We hold (1) that the warrant in question was not invalid, and was certainly not a nullity, and (2) it was at least sufficient as evidenced intention on the part of the State to toll the Statute of Limitations.
A  Validity of the Warrant. Section 901.03 Florida Statutes, F.S.A. prescribes what such arrest warrants shall contain, in the following language:
"901.03 Form and contents of warrant
The warrant of arrest shall:
(1) Be in writing and in the name of the State of Florida;
(2) Set forth substantially the nature of the offense;
(3) Command that the person against whom the complaint was made be arrested and brought before the magistrate issuing the warrant or, if he be absent or unable to act, before the nearest or most accessible magistrate in the same county;
(4) Specify the name of the person to be arrested, or if his name is unknown to the magistrate, designate such person by any name or description by which he can be identified with reasonable certainty;
(5) State the date when issued and the county and justice district where issued;
(6) Be signed by the magistrate with the title of his office; and
(7) In all offenses bailable as of right be indorsed with the amount of bail and the return day on the back of the warrant." (Emphasis supplied).
The record here contains a photostat copy of the affidavit and warrant, showing that on March 18th, 1963, John T. McMullen signed the affidavit under oath before said Justice of the Peace to the effect that on March 8th, 1963 the defendant had, with intent to defraud, uttered and delivered to Lerner Shops a check in the amount of $84.12 drawn on the Bank of Clearwater, securing therefor money, property or other things of value, without having sufficient funds with said bank to pay the check. The signature of the Justice of the Peace appears both upon the affidavit and also the warrant, with his official jurat on both instruments. The Sheriff's stamp on the warrant shows it was received in that office on March 19, 1963.
An apparently identical warrant, both as to form and content, was before this Court in Rosengarten v. State, Fla.App. 1965, 171 So.2d 591, and was relied upon in that case as having tolled the Statute of Limitations. Referring to the sufficiency of the warrant, this Court in Rosengarten said:
"The record shows the (alleged offense) occurred between the 1st and 4th day of April, 1961. The information was filed May 17, 1963 and alleged that a warrant was issued by a Justice of the Peace in Pinellas County on October 16, 1962 and was delivered to the sheriff of that county October 22, 1962. This warrant appears in the record as State's Exhibit # 18 and is so marked.
* * * * * *
"In the light of the foregoing we consider the defendant's contentions that the *258 State failed to prove that this prosecution began within two years of the date of the alleged crime. State's Exhibit # 18 is the warrant alleged in the information. It is dated October 16, 1962 and is directed to the sheriff or any constable of the county. It bears a time stamp `received 62 Oct 22 P M 4 21 Pinellas County Sheriff Don Genung' and it contains the endorsement of the Justice of the Peace to the effect that on November 2, 1962 preliminary hearing was waived and the defendant was bound over to Circuit Court under $1500 bond. We find that the warrant and the endorsements thereon are sufficient to prove that this prosecution was commenced within two (2) years from the date of the alleged crime. For the purposes of the statute of limitations, § 932.05, Fla.Stats., F.S.A., a prosecution has been commenced when a warrant has been issued and placed in the hands of a proper officer for execution. Dubbs v. Lehman, 1930, 100 Fla. 799, 130 So. 36, and State v. Emanuel, Fla.App. 1963, 153 So.2d 839."
The law is that a signature may be legally made not only by the signer himself, but by and through someone duly authorized by him. 80 C.J.S. Signatures § 2a, page 1287. In 80 C.J.S. Signatures § 7, page 1292, it is said:
"In the absence of a statute prescribing the method of affixing a signature, it may be affixed in many different ways. It may be written by hand, and, generally, in the absence of a statute otherwise providing, it may be printed, stamped, typewritten, engraved, photographed, or cut from one instrument and attached to another. A signature lithographed on an instrument by a party may be sufficient for the purpose of signing it, and it has been held or recognized that it is immaterial with what kind of an instrument a signature is made. Facsimile signature of a person may be a genuine signature."
Many cases from varying jurisdictions are cited in support of the text.[3]
If a facsimile or rubber stamp signature is affixed to the document by someone else, the only requisite is that it must be so affixed upon the authority or at the direction of the person whose signature it purports to be and also in his presence. 80 C.J.S. Signatures § 6, page 1291. While Judge Davis' testimony seems rather conclusive that he himself affixed his facsimile signature to the affidavit and warrant (it being a bad check case made by "deputy sheriff McMullen"), we consider for a moment the status of the warrant if mechanically affixed by his Chief Clerk. In such event, the only factor that would give pause would be the admonition that the affixing of Judge Davis' stamped signature must have been in his presence.
But the word "presence" is a variable term, depending upon the manner in which it is used. The "presence" may be immediate, or it may be mediate; it may be actual, or it may be constructive; it may be direct or it may be indirect. 72 C.J.S. page 490, defines "presence" to be 
"[a] term derived from `prac' and `ens.' It is not a technical term or a scientific word, but, standing alone without qualifier or adjective, is rather indefinite in its signification, although it may be somewhat explained by contrasting it with its opposite, `absence.' Its meaning depends on the circumstances of each particular case. The term implies an area which has no metes and bounds * * *".
The Supreme Court of Florida has held that where a person fires a pistol within *259 100 yards of an officer's residence, it may fairly be said that the pistol was fired in the "presence" of the officer, such as would authorize the arrest of such person without a warrant. Carlton v. State, 1912, 63 Fla. 1, 58 So. 486.
The important thing is that the issuance of the warrant was the act of the Justice of the Peace; it was his judgment that was invoked, and his judgment that was exercised. The affixing of the signature, even in the form of a rubber stamp and in the hand of his Chief Clerk, constituted an attestation that it was his act. The issuance of the warrant was his issuance; the commands in the warrant were his commands.
Even assuming the warrant was defective, it was certainly not a nullity. It was at least amendable. F.S. Sec. 901.05, F.S.A. provides:
"(1) No warrant of arrest shall be quashed or abated nor shall any person in custody for an offense be discharged from custody because of any informality in the warrant, but the warrant may be amended, so as to remedy any informality."
The Statute governing criminal prosecutions, F.S. Sec. 932.05 F.S.A. itself provides that if any indictment or information is quashed or set aside "because of any defect, omission or insufficiency in the contents or form thereof," the accusation, even though quashed and set aside after the two year period has elapsed, may be amended or a new indictment found or information filed "and prosecution thereunder shall proceed as if the same were commenced within two years after the commission of the offense."[4]
Cases from other jurisdictions abound to the effect that a deficient warrant, or lax procedure in the issuance thereof, however grave, will not nullify all proceedings under it. Thus a magistrate's failure to subscribe his jurat in the complaint or warrant was not a jurisdictional defect, on the issue of whether a prosecution was commenced within the statutory period. People v. Hagan, 138 Misc. 771, 247 N.Y.S. 374, affirmed 235 App.Div. 784, 257 N.Y.S. 887. The controlling date with respect to the Statute of Limitations is when the formal complaint is lodged with the Magistrate and not when the process of the Court issues thereon. Commonwealth v. Teeter, 163 Pa.Super. 211, 60 A.2d 416. A prosecution is not barred by limitation of time, where the complaining information was laid before the Justice within the statutory period, although the period had expired before the filing thereof or the issuance of the warrant. People v. Portman, 139 Misc. 544, 247 N.Y.S. 819. For a full collection of cases holding limitation statutes to be tolled notwithstanding varying deficiencies of a preliminary warrant or complaint, see 22 C.J.S. Criminal Law § 234 page 607, et seq.[5]
The rule as to amendment of the original process is stated in 22 C.J.S. Criminal Law § 236, page 610, as follows:
"In general where criminal process is duly issued within the period of limitations, an amendment to it, seasonably tendered, and which neither introduces a new cause of action nor adds any new parties, relates back to the original process, and prosecution under the amended process or pleading is not barred even though the amendment was made after the expiration of the period of limitation. Amendment of the preliminary affidavit or complaint does not operate to terminate the prosecution or to interrupt its continuity so as to affect the operation *260 of the statute of limitations * * *."
As stated by this Court in State v. Emanuel, Fla.App. 1963, 153 So.2d 839:
"An arrest warrant may be amended or dismissed without jeopardy attaching, being legally insufficient only when it wholly fails to charge an offense as defined by law * * *. If the sufficiency of an arrest warrant is to be tested, the standards for arrest warrants should be applied. It would be incongruous, under the facts of this case, to hold that the statute of limitations was not tolled where the defendant failed to challenge the sufficiency of the warrant prior to the filing of the information." (Emphasis supplied).
The Supreme Court of Florida in Williams v. State, 1929, 97 Fla. 401, 121 So. 462, held that, where a Justice of the Peace has jurisdiction of the person accused and the subject matter of the charge (worthless check), and has the power to issue a warrant therefor, the person arrested thereunder has no right to be discharged on habeas corpus because of admitted deficiencies in the warrant. In the case sub judice there was no question of the jurisdiction of Justice of the Peace Davis over the person of the defendant or the charge contained in the warrant, or of his power as Justice of the Peace to issue it.
The record before this Court shows that defendant was not arrested under the warrant until November 15, 1965, that she thereupon waived preliminary hearing, and was bound over to the Circuit Court under $500 bond. The record throws no light upon why she was not apprehended for a period of two years and eight months after it was issued, but it may fairly be presumed that she was simply "unavailable for service." And the fact that defendant waived hearing under the warrant, after finally being apprehended and even then making no protest to its validity, places further beyond her reach any successful challenge to the efficacy of the warrant, especially after formal information has been filed in the Circuit Court against her.
Under the Florida decisions an accused may be prosecuted even though the indictment is found or the information filed more than two years after the commission of the alleged offense, provided a preliminary warrant has been issued by a magistrate charging the offense, and process issued thereunder and delivered to the Sheriff of the county, within the two year period. In such cases, the indictment or information simply alleges the previous issuance of the warrant and delivery thereof to the sheriff, as a part of the allegations therein. Dubbs v. Lehman, 1930, 100 Fla. 799, 130 So. 36; Rouse v. State, 1902, 44 Fla. 148, 32 So. 784; State v. Emanuel, supra; Rosengarten v. State, supra.
In State ex rel. Silverman v. Coleman, 1939, 139 Fla. 656, 190 So. 811, an information filed within the two year period was quashed because it was not sworn to under oath by the prosecuting attorney as required by Sec. 28, Art. 5, of the Florida Constitution. After the two year period had run a new information was filed which was properly sworn to, and the Supreme Court held that prosecution under the latter information would lie because the prosecution was "commenced" prior to the expiration of the two year period. Surely the warrant in the case at bar was no more defective than the first information in Silverman, which did not even comply with mandatory Constitutional requisites as to validity.
In State ex rel. Melson v. Peeler, Judge, 1933, 107 Fla. 615, 146 So. 188, 90 A.L.R. 447, the County Solicitor had sworn to the information before a person not qualified to take acknowledgments, namely, a deputy clerk of the Criminal Court, but the Supreme *261 Court, in holding the defect to be not fatal, said:
"The deputy is not an officer, but acts for and in the name of the clerk who is an officer. The jurat is not insufficient or illegal."
Also in the Melson case the Clerk neglected to issue capias upon the information until after the two year period had run, and it was contended that the prosecution had thereby abated because process had not been delivered to the sheriff's office within time; but the Supreme Court held that the mere filing of the information within the two year period operated to toll the statute and that prosecution would lie, which seemed to be a departure from the strict holding of Dubbs v. Lehman, which required delivery of process as well as filing of the charge.
To summarize our views respecting validity of the arrest warrant here involved, we hold (a) the defendant failed to overcome the presumption that the Justice of the Peace affixed his signature to the warrant himself, whether by actual signing or by facsimile stamp, (b) even if his facsimile signature was affixed to the warrant by his Chief Clerk it was done with his authorization and at least in his constructive presence, and the warrant is therefore valid, (c) the Magistrate at least had jurisdiction of the defendant and the charge involved, and the power to issue the warrant, and it was therefore not a nullity, but if necessary amendable, and (d) in any event the defendant effectually relinquished any defect in the form or content of the warrant by waiving preliminary hearing after her arrest and raising no objection prior to filing of the information.
B  Evidenced Intention of State to Toll the Statute. There is a more fundamental reason why the issuance of the warrant in the case sub judice, however defective the signature of the Magistrate thereon, should be held to stop the running of the Statute of Limitations. And that is that the State of Florida clearly evidenced its intention to "commence the prosecution" by procuring the Magistrate to issue his warrant for the defendant's arrest within ten days after the alleged offense was committed. To hold that, merely because some question exists as to whether or not the Magistrate himself signed his name to the warrant or put his stamped signature thereon, or had his Chief Clerk do it for him, the entire prosecution must collapse, is to place too narrow a construction upon what really constitutes the commencement of a criminal prosecution. The only purpose of a Statute limiting the time within which a criminal charge may be prosecuted is to protect every person from being interminably under the threat or cloud of possible criminal prosecution, which otherwise might be indefinitely delayed until the time when defense witnesses might die, disappear or othwise become unavailable, judges would change office, or innumerable other time hazards might develop, which could conceivably defeat, or at least hamper, an otherwise good defense.
At common law there was no limitation of time within which a criminal prosecution was permitted;[6] a statute of limitation as to criminal prosecution is strictly a creature of Statute. As such, it is an extension of the sovereign power in behalf of the individual. And while it has been generally held that such a Statute should be liberally construed in behalf of the individual, by the same token, in simple justice to the State as the sovereign authority bestowing the privilege, it is entitled to something more than a hypertechnical, distorted, strained construction of the factors constituting the exercise of such privilege.
In the instant case it is abundantly clear that the State of Florida intended in good faith to commence the prosecution of defendant a few days after the alleged offense *262 was committed and took positive steps to set the machinery in motion to effectuate and to evidence that intent. Such substantially should satisfy the Statute. The fact that defendant evades service of legal process for two and a half years thereafter and neither submits to such process or challenges in any way the sufficiency thereof, should not be permitted to defeat the very purpose of procuring its issuance in the first place, which was ostensibly to stop the running of the Statute. Technical niceties and strained construction should not be allowed to defeat elemental justice and fair reasoning.
Our views are crystalized in the following sentiments expressed in 22 C.J.S., Criminal Law § 223, beginning on page 573, as follows:
"Statutes of limitation are construed as being acts of grace, and as a surrendering by the sovereign of its right to prosecute or of its right to prosecute at its discretion, and they are considered as equivalent to acts of amnesty. Such statutes are founded on the liberal theory that prosecutions should not be allowed to ferment endlessly in the files of the government to explode only after witnesses and proofs necessary to the protection of accused have by sheer lapse of time passed beyond availability. They serve, not only to bar prosecutions on aged and untrustworthy evidence, but also to cut off prosecution for crimes a reasonable time after completion, when no further danger to society is contemplated from the criminal activity."
The order of the Circuit Court granting the motion to quash the information is reversed and the cause remanded with instructions to reinstate the information against defendant and proceed with the prosecution.
Reversed and remanded.
ALLEN, C.J., and HOBSON, J., concur.
NOTES
[1] F.S. Sec. 924.07(1), F.S.A.
[2] Before F.S. Sec. 909.02, F.S.A. became effective, plea in abatement would have been the appropriate mode of raising the point.
[3] The legality of facsimile signatures on official documents is no longer in doubt since passage of the Uniform Facsimile Signature of Public Officials Act (laws 1963, c. 63-441), which became effective June 14, 1963. F.S. Sec. 116.34, (3) (c), F.S.A.
[4] The only requirement is that such amendment or filing of new charge must be within three months after the order of the Court quashing or setting aside the original charge, which period of three months is without significance here.
[5] We do not adopt these precise holdings from other jurisdictions, but cite and quote from them merely as supporting our views otherwise expressed herein.
[6] State v. McCloud, Fla. 1953, 67 So.2d 242.